(No. 47695.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. OTIS CARL WILLIAMS *et al.*, Appellants.

*Opinion filed May 20, 1977.*

480

Earl L. Washington, of Chicago, and Edward N. Morris, of Streamwood, for appellant.

William J. Scott, Attorney General, of Springfield (James B. Zagel, Jayne A. Carr, and Victor M. Pilolla, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

In an indictment returned in the circuit court of

Kankakee County, Otis Carl Williams and A. D. Clark, Jr., hereafter defendants, and Ernest Jerome Clark, were charged with the murders of General Johnson and Othella Covington. The circuit court allowed Ernest Jerome Clark's motion for severance. Following a jury trial defendants were convicted of both murders and a three-judge court, convened pursuant to section 5—8—1A of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(A), subsequently held unconstitutional in *People ex rel. Rice v. Cunningham,* 61 Ill. 2d 353), sentenced the defendants to death. Defendants appealed directly to this court. Ill. Const. 1970, art. VI, sec. 4(b).

Defendants contend first that they were not proved guilty of the murders beyond a reasonable doubt. The testimony shows that on April 11, 1974, an explosion and fire occurred in a house trailer located near the village of Pembroke and occupied by the deceased, General Johnson. George Anthony, who lived a quarter of a mile from the Johnson trailer, testified that he heard three explosions, saw the trailer burning, and called the Pembroke Fire Department. The captain of the Pembroke Fire Department testified that when he arrived at the scene the trailer and a small building adjoining it were totally enveloped in flames, and that it took approximately 45 minutes to control the blaze. Two badly burned bodies, identified as General Johnson and Othella Covington, were removed from a daybed or couch inside the trailer. A deputy coroner testified that it is unusual to find a large quantity of blood when death results from burning. The cushions on the couch, however, were "soaked with blood." Dr. Emmanuel Somers, a pathologist at St. Mary's Hospital in Kankakee, testified that the body of the male victim showed evidence of severe damage to the entire neck area and it was suspected that there was a fracture of the cervical spine. One large-sized vessel appeared cut, and the victim had bled so profusely that it was impossible to obtain a blood sample. Dr. Somers was present during the autopsy performed on the body of Othella Covington. A

clean cut measuring approximately three centimeters was found in the area of the temporal bone, and he stated that this could "not have been done otherwise than with a sharp instrument." He expressed the opinion that the cause of death of each victim seemed to be a combination of trauma and severe burning. A blood sample was taken from the body of Othella Covington.

The evidence showed that on the early morning of March 30, 1974, the P & E Food Market, located in Pembroke, was burglarized, and a large quantity of packaged meat and cigarettes was stolen. Antonio Riggins testified that on March 30, 1974, he was living with Annie Ruth Clark, the mother of defendant A. D. Clark, Jr. Defendants and Ernest Jerome Clark came in and told them that they had some meat and wanted to use his car. They took the meat to the trailer occupied by A. D. Clark, Sr., the father of the defendant Clark. Clark, Sr., testified that Annie Ruth Clark and Antonio Riggins brought some meat to his trailer which he refused to keep, and that the meat was taken to the home of his brother-in-law, the deceased, General Johnson. Later, defendant Clark asked him where the meat was and he told him. Johnson drove Clark, Sr., to the Social Security office, and when they returned they found that someone had broken into Johnson's trailer and the meat was gone.

Clint Butler, chief of police of Pembroke, testified that as the result of information received, he went to the home of the deceased, General Johnson, at approximately 10:30 a.m. on March 31, and that both a refrigerator and a freezer there were filled with packaged meat. He returned the next day and almost all of the meat had been removed. He had also been permitted to examine a refrigerator in a trailer then occupied by the defendant Clark and Kathryn Greer, and it too was full of packaged meat.

The testimony also shows that on April 11, A. D. Clark, Sr., and Mrs. Cora Bell had been at General Johnson's trailer visiting and watching television. While

they were there the defendants came to the door and in a conversation with Johnson stated that he owed them $7. There was a discussion in which Johnson replied that he was going to have the defendants arrested for stealing his meat and the defendant Clark threatened "to get even" with him.

Mrs. McNeill, who lived approximately 300 feet from the deceased Johnson's home, testified that she had seen defendants and Ernest Jerome Clark at Johnson's home at noon and again at approximately 7 p.m. on the evening of the homicide, and that at 7 p.m. they were carrying a grocery bag and "peeking" in Johnson's window. Mrs. Palmore, whose home was also situated approximately 300 feet from the deceased's home, stated that she was attracted to the occurrence by a loud crackling sound, and that when she looked out of her window she saw the three defendants running from Johnson's trailer. Because of the burning trailer, there was sufficient light so that she could identify the defendants by their shapes and the way they moved.

John Bender testified that on the evening of April 11, at about 10:15, he saw "three guys" walking down the road approximately 25 feet from General Johnson's driveway. One of them was the defendant Clark, but he could not identify the other two men.

There were other circumstances shown which tended to support the People's theory that the fire was set following the murder of the two victims and that defendants were involved. An assistant fire inspector testified that three 100-pound LP gas cylinders, lying in close proximity to the trailer, had burst. He expressed the opinion that the bursting or explosion of the cylinders was not the cause of the fire but that the fire had been set and an accelerant used. General Johnson's brother testified that he found, half empty, a five-gallon container of gasoline which he had filled on the day of the fire. When the defendant Clark was taken into custody, the arresting

officer "smelled a faint odor of gasoline," and Clark's clothing was sent to a laboratory for tests. A chemist testified that in his opinion certain components found in a sample taken from the cushion on the couch on which the bodies were found, and in Clark's clothing, were similar to gasoline. He could not state positively that the petroleum distillate was gasoline rather than kerosene, but expressed the opinion that it was probably gasoline. There was testimony that a spot of blood on Clark's shoe and the blood sample taken from Othella Covington were both type O Rh negative.

In explanation of the presence of the petroleum distillate on Clark's clothing, his mother, Annie Ruth Clark, testified that Clark had helped her fill some oil lamps on the night of the fire and had spilled kerosene on himself. In explanation of the blood on his shoe, Ernest Peden testified that in a fight he had cut Clark with a box cutter.

Defendants argue that "There was no direct evidence that either Otis Williams or A. D. Clark, Jr., perpetrated the acts which caused the death of General Johnson and Othella Covington. There is circumstantial evidence. The issue on review before this court is whether that circumstantial evidence is so strong as to negate all reasonable hypotheses of innocence and lead *only* to the conclusion that these two defendants are murderers. If the circumstantial evidence raises only the *possibility* that they are the guilty parties, then they must be freed. *People v. Branion,* 47 Ill. 2d 70, 77 (1970); *People v. Marino,* 44 Ill. 2d 562, 580 (1970)." We find apposite here the statement in *People v. Marino,* 44 Ill. 2d 562, 580, that "it is well settled that the commission of an offense may be established entirely by circumstantial evidence. As we observed in *People v. Bernette,* 30 Ill. 2d 359, 367, 'a conviction may be sustained upon circumstantial evidence as well as direct evidence, (*People v. Russell,* 17 Ill. 2d 328,) it being necessary only that the proof of circum-

stances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. (*People v. Magnafichi,* 9 Ill. 2d 169; *People v. Grizzel,* 382 Ill. 11.) The jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence, taken together, satisfies the jury beyond a reasonable doubt of the accused's guilt.' " Proof of guilt beyond a reasonable doubt does not require proof beyond any possibility of a doubt. (*People v. Hanson,* 59 Ill. 266; *People v. Branion,* 47 Ill. 2d 70.) From our examination of the record we conclude that the evidence is sufficient to prove guilt of both defendants of both murders beyond a reasonable doubt.

Defendants contend next that the circuit court's admittedly erroneous admission of testimony that defendants participated in an attempt to escape from the Kankakee County Detention Center was so prejudicial as to require reversal. The record shows that the court admonished the jury in the following manner:

"THE COURT: Ladies and gentlemen of the jury, the defense has made a motion to strike all the evidence you have heard thus far concerning an alleged purported attempted escape. I am granting their motion and I am striking all the evidence you have heard thus far concerning a purported attempted escape for the reason that that evidence does not in any way tend to prove who killed who in this case, so I instruct you in your deliberations, forget all you heard about escape—that has nothing to do with this case. Devote yourselves completely and entirely to the evidence that concerns itself with the murder and the evidence leading up to the murder. Is that clear to you, ladies and gentlemen?

JURY: Yes, sir."

An instruction, in the form of Illinois Pattern Jury Instruction Criminal No. 1.01, told the jury that it was to "disregard testimony and exhibits which the court has

refused or striken." Under these circumstances we hold that the error was not so prejudicial as to require reversal.

Defendants' final contention arose out of an allegedly erroneous ruling during the cross-examination of defendant Williams. The transcript shows the following:

> "Q. Did you talk to General Johnson about Johnson's talking to the police about the P & E Supermarket burglary?
>
> A. No, I didn't.
>
> Q. Mr. Williams, did you and A. D. Clark burglarize the P & E Supermarket?
>
> MR. VOGT: Object. It is outside the scope of Direct Examination. Also he stands on his privilege not to incriminate himself.
>
> THE COURT: Once he takes the witness stand he gives up all questions of privilege. I will let him answer.
>
> A. Yes."

Defendants argue correctly that Williams' testimony on direct was limited to describing his activities on the day of the homicides and to a denial that he had killed the decedents. They contend that in permitting the cross-examination that elicited answers admitting the commission of a burglary at an earlier time, the circuit court committed reversible error.

The question whether and to what extent an accused who elects to testify waives his privilege against self-incrimination has been the subject of much discussion (see, *e.g.,* 8 Wigmore, Evidence 456 (McNaughton rev. ed. 1961)). The rule evolved from the prior decisions of this court is that a defendant who takes the stand waives the privilege against self-incrimination to the extent necessary to proper permissible cross-examination. Although, as a general rule, cross-examination is limited to the subject matter inquired into on direct examination, the general rule is modified to the extent that "It is proper on cross-examination to develop all circumstances within the knowledge of the witness which explain, qualify, discredit or destroy his direct testimony although they may incidentally constitute new matter which aids the cross-examiner's case." (Gard,

Illinois Evidence Manual R. 471 (1963).) As the court said in *People v. Burris*, 49 Ill. 2d 98, 104: "The defendant who takes the stand and testifies in his own behalf in a criminal case not only offers himself as a witness in his own behalf but thereby subjects himself to legitimate cross-examination. The extent of cross-examination with respect to an appropriate subject of inquiry rests in the sound discretion of the trial court. It is only in the case of a clear abuse of such discretion resulting in manifest prejudice to the defendant that a court of review will interfere."

In view of the testimony concerning the controversy between defendant Williams and the deceased Johnson over the stolen meat, and the threat to which Clark, Sr., testified, the circuit court did not abuse its discretion in permitting the cross-examination. We conclude that there was no error which requires reversal. The sentences of death are vacated, and the judgment otherwise is affirmed. There remains for consideration the matter of imposition of appropriate sentences. We are of the opinion that it is inadvisable for this court to fix the sentences on the basis of a record made two years ago, and the cause is therefore remanded to the circuit court of Kankakee County with directions to conduct appropriate presentence proceedings and impose new sentences.

*Affirmed in part and vacated in part and remanded.*