THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RONALD RASSMUSSEN, Defendant-Appellant.

First District (5th Division)   No. 83—1856

Opinion filed April 25, 1986.—Modified on denial of rehearing
June 13, 1986.

James J. Doherty, Public Defender, of Chicago (Karen S. Szpajer, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, James S. Veldman, and Christopher J. Cummings, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Defendant, Ronald Rassmussen, was charged in a four count indictment with two counts of deviate sexual assault (Ill. Rev. Stat. 1979, ch. 38, par. 11—3(a)) and two counts of indecent liberties with a child (Ill. Rev. Stat. 1979, ch. 38, par. 11—4(a)(2)). After a bench trial, the circuit court of Cook County found defendant guilty of both counts of deviate sexual assault and merged the indecent-liberties counts with the assault counts as lesser included offenses. At the sentencing

hearing, after the State erroneously informed the court it had failed to make any findings on the indecent-liberties charges, the court entered judgment on those counts as well and sentenced defendant to concurrent terms of eight years on the deviate-sexual-assault counts and six years on the indecent-liberties counts. On appeal, defendant asserts 11 errors which require reversal of his conviction, remand of the case for a new trial or remand of the case for resentencing. For the reasons set forth below, we affirm in part and reverse in part, vacate sentence and remand for resentencing.

The record reveals that defendant's arrest resulted from evidence obtained by Chicago police officers while pursuing an investigation into child sexual exploitation. On April 7, 1982, police officer Brian Killacky located a 14-year-old runaway boy working in Chicago as a prostitute. He in turn led Officer Killacky to another runaway boy. Both youths lived with defendant in Lyons. The second youth told the police he wanted to move back home to Chicago, but stated he needed to remove his personal belongings from defendant's apartment. Thereafter, he unlocked the door to defendant's apartment with a key, allowed the police to enter in order to help him, and they found defendant asleep in his bedroom. The officers awakened defendant, identified themselves, and asked defendant to go to the living room so that they could speak with him. Other officers remained in the bedroom and, in the course of helping the youth gather his belongings, they discovered a number of photographs depicting nude children which defendant admitted to owning.

The police seized these photographs and later determined that one of the boys pictured in them was defendant's 14-year-old nephew Ron C. Ron C., after being questioned, identified 12-year-old Larry S., the complaining witness and victim, as the other boy pictured in one of the photographs with him. When questioned together, both boys stated to the police that defendant had engaged in sexual relations with them. At trial, however, Ron C. retracted his and Larry S.'s statement that defendant had engaged in sexual relations with them, whereas Larry S. specifically testified that defendant sexually assaulted him while Ron C. "held him down."

Prior to trial, defendant moved to quash his arrest and suppress the photographs. The court denied defendant's motion to quash, but granted the motion to suppress the photographs based on its determination that they were not in plain view when the officers discovered them and were seized without a search warrant and without defendant's consent.

## I

On appeal, defendant contends for the first time that the testimony of Larry S. should have been suppressed. Defendant argues that the identity of Larry S. and his subsequent testimony were products of the illegal search of his apartment in violation of the Federal and Illinois constitutions prohibiting illegal searches and seizures (U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, sec. 6) and, thus, "the fruit of the poisonous tree" (*Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417).

The State argues that defendant's failure to raise this issue at trial or in his post-trial motion for a new trial constitutes a waiver of the alleged error under section 116—1(c) of the Code of Criminal Procedure of 1963 which provides that a motion for a new trial "shall specify the grounds therefore" (Ill. Rev. Stat. 1985, ch. 38, par. 116—1(c)). Where waiver of an issue occurs, constitutional or otherwise, that issue cannot be urged as a ground for reversal on review. (*People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227.) In response, defendant contends that under the plain-error rule (87 Ill. 2d R. 615(a)), a reviewing court may consider errors not properly preserved for appeal where their nature is such as to deprive an accused of his constitutional rights. *People v. Willis* (1976), 39 Ill. App. 3d 905, 907, 351 N.E.2d 330.

■ Although the waiver rule " 'is not an ironclad rule' [citation]" (*People v. Dickerson* (1979), 69 Ill. App. 3d 825, 828, 387 N.E.2d 806), neither is the fruit-of-the-poisonous-tree doctrine applicable to all evidence discovered in an illegal search (*Wong Sun v. United States* (1963), 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417). The doctrine does not apply to (1) evidence discovered from an independent source, (2) evidence sufficiently distant in causal connection from the controverted search and seizure so that any connection has become so attenuated as to dissipate any taint or (3) evidence which inevitably would have been found without an illegal search. Satisfaction of any of the foregoing removes the evidence in question from the purview of the doctrine. *United States v. Twomey* (7th Cir. 1974), 508 F. 2d 858, 865.

■ In the instant case, it is unnecessary to address the State's waiver contention because we have determined that Larry S.'s testimony was an acorn from a mighty oak rather than the fruit of the poisonous tree. Granting establishment of the primary illegality—the search of defendant's apartment—the evidence to which defendant objects was not obtained by exploitation of the illegality, but rather by

means sufficiently distinguishable to be purged of the primary taint. (See *Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.) First, no nexus exists between the crime of which defendant was convicted and Larry S.'s identity and testimony. Both were not discovered as a result of the tainted photographs, but rather as a result of an independent source, *i.e.*, defendant's nephew Ron C. told the police that he had brought 12-year-old Larry S. to defendant's apartment where the 52-year-old man sexually assaulted him. Secondly, at the time of the illegal search the police had no knowledge of either the victim's identity or the crimes against him. Accordingly, the police did not enter defendant's apartment to gather evidence on the deviate-sexual-assault and indecent-liberties charges which were later filed against defendant—they entered defendant's apartment to help a runaway youth who was living with him to gather up his personal belongings. A sufficiently distant causal connection from the controverted search and seizure, therefore, existed and any connection between the events was so attenuated as to dissipate any taint. See *People v. Pettis* (1973), 12 Ill. App. 3d 123, 298 N.E.2d 372.

We further briefly note that the Illinois cases relied upon by defendant with respect to this issue are distinguishable from the present case. In *People v. Albea* (1954), 2 Ill. 2d 317, 118 N.E.2d 277, and *People v. Martin* (1942), 382 Ill. 192, 46 N.E.2d 997, unlike the circumstances here, the testimony suppressed directly dealt with the police department's motivation for conducting the illegal search, each having been conducted to gather evidence of crimes for which the police had prior knowledge.

We also disagree with defendant that suppression of Larry S.'s testimony would serve the remedial objectives of the fourth amendment exclusionary rule—deterrence of future police misconduct. As mentioned above, discovery of Larry S.'s identity and his subsequent testimony were not the fruit of the illegal search. In addition, the record discloses that Larry S. voluntarily went to the police station when requested to appear and he willingly testified at trial. Suppression of his testimony therefore would result in penalizing him, the government and the community, and would do nothing to advance the objectives of the exclusionary rule. See *United States v. Ceccolini* (1978), 435 U.S. 268, 275, 55 L. Ed. 2d 268, 275, 98 S. Ct. 1054, 1060.

Accordingly, we hold that the trial court properly admitted the testimony of Larry S.

## II

■ Defendant next argues that the failure of his trial counsel to move to suppress Larry S.'s testimony was tantamount to ineffective assistance of counsel requiring a new trial. We disagree. In *Strickland v. Washington* (1984), 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2063, 2068, the Supreme Court established a two-prong test to adjudicate sixth amendment ineffective assistance of counsel claims. That test is whether or not (1) a defendant's counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A defendant must also overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694-95, 104 S. Ct. 2052, 2065-66.

■ Applying the above test to the instant case, we find defendant's ineffective assistance of counsel assertion without merit. Prior to trial, defendant's counsel successfully moved to suppress the photographs seized in defendant's apartment despite the fact that the question of the illegality of the seizure depended upon whose testimony the trier of fact believed more credible—the police officers or defendant's witnesses. Counsel also effectively examined defendant's own witnesses and cross-examined the State's witnesses, demonstrating an intimate knowledge and understanding of the facts and law in the case. He further made an able argument at trial and arguments at the sentencing hearing. Additionally, for the reasons previously set forth in point I of this opinion, we also cannot say that the absence of a motion by counsel to suppress Larry S.'s testimony was error; such a motion would have been futile and failure to do a futile act does not constitute a denial of effective assistance of counsel. See *People v. Gallardo* (1983), 112 Ill. App. 3d 764, 769, 445 N.E.2d 1213.

Defendant also has failed to offer any evidence that he was prejudiced by his counsel's representation, except his bare allegation pertaining to the isolated action of counsel's failure to move for suppression of the victim's testimony. Rather than focusing on isolated circumstances occurring during the course of proceedings, all facts and circumstances set forth in the record must be considered. (*People v. Williams* (1986), 140 Ill. App. 3d 216, 228, 488 N.E.2d 649.) Viewing defense counsel's performance as a whole, we find that it did not fall below an objective standard of reasonableness and that, in light of defendant's failure to show that he was prejudiced, the outcome of

the proceedings would not have been different had counsel moved to suppress Larry S.'s testimony. Defendant also has failed to overcome the strong presumption that counsel's conduct was within the wide range of reasonable professional assistance.

Accordingly, we find defendant's argument on this issue without merit.

### III

Defendant asserts as his third assignment of error that the trial court committed reversible error when it allowed the State to use the photographs ordered suppressed to impeach defendant's credibility. The suppressed photographs, which the court denied the State's use of in its direct case, depicted defendant, his nephew Ron C. and the victim Larry S., among others, in the nude. Various photographs also depicted Ron C. and Larry S. in the nude together and were taken in a wooded area.

We first note that the parties are in disagreement with respect to the purpose for which the State sought introduction of the photographs into evidence. At trial, the State commented the purpose was to impeach defendant's character. In its appellate brief, the State argues the purpose was to contradict defendant's statements that he had rarely seen the victim and had only observed his penis on one occasion. Since the record clearly indicates that the trial court admitted the photographs for the purpose of impeachment of defendant's credibility, we address this issue on that basis.

On direct examination defendant testified as to his good character, admitted that he knew the victim, denied sexually assaulting him and stated he did not meet the victim until June 1981, subsequent to the May 12, 1981, occurrence testified to by the victim. On cross-examination, defendant testified he first met Larry S. when his nephew asked if he could accompany them on a fishing trip; that he did not like the victim and considered him a "bad element" and did not like him "hanging around" his nephew; that the second time he saw Larry S. was when his nephew brought him to ask if sores he had were syphilis; that he saw the victim again after he had received penicillin shots; and that he saw Larry S. a fourth time in November 1981 in some woods south of La Grange. Defendant also stated he had seen the victim's penis on only one occasion when Larry S. asked him if he had syphilis. He specifically denied he had observed his penis in the woods in November 1981 or that he had seen him "pull his pants down" and

pose for photographs.

Thereafter, to impeach defendant's credibility with respect to his statement that he had never observed the victim's penis in the woods, the State referred to the previously suppressed photographs, over defendant's objection, and a manuscript admittedly written by defendant in which he recounted his examination of the victim for syphilis and sending him to a clinic for treatment. The manuscript described a 13-year-old boy who defendant had earlier identified as Larry S., and an excerpt from it, read by the prosecution, stated:

"My nephew kept hanging around with this boy. So, we allowed the kid to go with us for drives to parks and lakes to fish. I like to fish and I like the outdoors. While trompsing one day through the woods the boys met a dude with a camera who wanted pictures of them. So, they gave him a peep show pose, the two of them showing their stuff. The dude sent the copies like they asked for using my address. And of course I got them in the mail and thought them to be quite cute."

After this reading, the following colloquy occurred:

"MR. GREEN [defense counsel]: We object, Your Honor, as to not being material to this case.

THE COURT: Oh no, objection overruled, the credibility is at stake now.

BY MR. CORBOY [assistant State's Attorney]: Q. Is that in your transcript, Mr. Rassmussen?

A. It does not say that I seen the boys, it is hearsay, the stuff that Ron told me.

Q. Excuse me, sir, like I said yes or no?

'While trompsing through the woods the boys met a dude with a camera who wanted pictures of them.' And the sentence before says you were with them.

'So, they gave him a peep show. I got copies like they asked for using my address, of course. I got them in the mail and thought them to be quite cute.'

Yes or no, is that on your manuscript?

A. The book is fiction.

* * *

Q. Right there, take a look at it, is that true?

A. It does not say that I seen them, it does not say that I was with them. It says that this is what they told me."

The State then asked defendant if he eventually received the pictures, to which he responded affirmatively but stated he did not know who sent them. The State continued:

"Q. As a matter of fact, you got a couple of copies like about a half a dozen on them, didn't you?

MR. GREEN: We object, we are going too far beyond the issues in this case, Your Honor.

MR. CORBOY: His character is in issue.

THE COURT: Credibility is at stake now. Objection overruled.

* * *

Q. I will show you what is marked as People's Group Exhibit Number 2. Take a look at these pictures, would you?

A. Yes, sir.

Q. Take a look at them, spread them out. You have seen these before, haven't you?

A. (No response.)

Q. Yes or no?

A. Yes, I have.

Q. Those are the pictures that the police confiscated at your apartment?

MR. GREEN: We object, Your Honor. Those pictures were taken as a result of an illegal search and the Court so has—

MR. CORBOY: They are now allowed to be used in cross-examination as well as impeachment.

THE COURT: They may be used for impeachment."

■ While cross-examination is generally limited to subject matter inquired into on direct examination, it is nonetheless proper to develop all circumstances within a defendant's knowledge which explain, qualify, discredit or destroy his direct testimony, even though it may incidentally constitute new evidence which aids the cross-examiner's case. (*People v. Williams* (1977), 66 Ill. 2d 478, 486-87, 363 N.E.2d 801.) In the instant case, clearly the questions put to defendant on cross-examination were within the scope of his direct examination. The State's inquiries were premised on defendant's testimony regarding his relationship with the victim. How well defendant knew Larry S., measured by his encounters with him and the circumstances of those encounters, as well as his opinion that the victim was a "bad element," were subject to further explanation by defendant on cross-examination.

■ Here, defendant's statements, that he only had observed the victim's penis on one occasion and that he never observed it while in the woods, prompted the State's introduction of defendant's manuscript in which he had stated "while trompsing through the woods the boys met a dude with a camera who wanted pictures of them"

and "they gave him a peep show pose, the two of them showing their stuff." The manuscript's reference to the pictures then established a nexus between defendant's statements and the pictures, and the court properly admitted the photographs to impeach defendant's credibility with respect to these statements. (See *United States v. Havens* (1980), 446 U.S. 620, 64 L. Ed. 2d 259, 100 S. Ct. 1912 (evidence obtained as a result of an illegal search can be used to contradict a false statement made by a defendant on direct examination and on proper cross-examination).) Although defendant denied being present when the pictures were taken and the State contended his manuscript indicated otherwise, it was the duty of the trial court to resolve the conflict in the evidence and the credibility of the witnesses. (*People v. Underwood* (1982), 108 Ill. App. 3d 846, 439 N.E.2d 1080.) The trial court's decision should not be reversed unless it is against the manifest weight of the evidence. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.) The record in this case shows the trial court carefully considered this issue and we see no reason to disturb its ruling.

■ We further note that to prohibit the State from affirmatively using the photographs unlawfully obtained, while allowing defendant to turn the illegal method by which they were obtained to his own advantage and provide himself "with a shield against contradiction of his untruths[,] *** would be a perversion of the Fourth Amendment" (*Walder v. United States* (1954), 347 U.S. 62, 65, 98 L. Ed. 503, 507, 74 S. Ct. 354, 356) and contravene the dictates of justice.

Accordingly, we hold that the trial court did not err in admitting the photographs into evidence.

## IV

■ Defendant's next contention overlaps his preceding assignment of error. Defendant argues that the trial court erred in allowing the State to use the previously suppressed photographs to impeach his nephew Ron C. on cross-examination. On direct examination, Ron C. testified that he had never seen Larry S.'s "private parts" or penis in the presence of defendant. He also testified as to conversations with the police concerning the photographs.

The State argues that defense counsel's initiation of this line of questioning on direct examination "opened the door" to this subject matter on cross-examination. We agree. It is axiomatic that the purpose of cross-examination is to elicit matters which explain, modify or discredit any of the evidence introduced on direct examination. (*People v. Adams* (1982), 111 Ill. App. 3d 658, 664, 444 N.E.2d 534) and it

is entirely proper for the prosecution to clarify these matters on cross-examination once the defense has initiated a line of questioning on direct examination (*People v. Delaney* (1978), 63 Ill. App. 3d 47, 49-50, 379 N.E.2d 829).

Here, Ron C. testified on direct examination that he had never seen the victim's "private parts" or penis in the presence of defendant, contrary to the photographs depicting him with Larry S. with their "pants down" in the woods and Ron C.'s statement to the police that defendant was present at that time. Based upon his testimony on direct examination, the State properly challenged this information on cross-examination. We further note, as similarly stated in point III of this opinion, that to allow defendant to use the suppressed photographs on direct examination of its witness and prohibit the State from using them on cross-examination of that witness would make a mockery of our rules pertaining to illegally seized evidence.

For the above reasons, we also find defendant's argument on this issue without merit.

## V

Defendant further argues that the trial court in determining defendant's guilt relied on alleged improper insinuations by the State that defendant had taken the suppressed photographs, thereby committing the offense of child pornography. The State argues that defendant has waived this issue since he failed to raise it at trial or in his post-trial motion. We need not address the State's waiver contention because of our disposition that defendant's argument is without merit.

It is well settled in Illinois that a trial judge at a bench trial is presumed to have considered only properly admitted evidence in making his decisions. (*People v. Rodgers* (1978), 58 Ill. App. 3d 719, 724, 374 N.E.2d 721.) To overcome this presumption, a defendant is required to affirmatively show that the trial court actually relied on the objectionable evidence. *People v. Martin* (1983), 112 Ill. App. 3d 486, 498-99, 445 N.E.2d 795.

Here, defendant has failed to show that the court actually relied on the alleged insinuations by the State that defendant had taken the photographs and therefore had committed the offense of child pornography. In fact, the record indicates that the contrary is true. Specifically, the court, in allowing the State to inquire how many suppressed pictures defendant had received, overruled defendant's objection to this question, stating, "Credibility is at stake now." The

court also overruled defendant's objection to the State's request of defendant to identify the suppressed photographs in court, finding that the photographs "may be used for impeachment." These comments clearly support the State's argument that the court only considered the photographs for impeachment purposes. Since the record is devoid of any evidence that the court considered any evidence not properly admitted, defendant's argument fails.

## VI, VII, VIII

Defendant's next three points of alleged error concern his assertions that the trial court in determining his guilt improperly relied on insinuations that he was a homosexual, possessed homosexual literature, and had engaged in sexual misconduct with other boys. Waiver of point VI, because it was not raised in defendant's post-trial motion, need not be addressed because of our disposition of the issue.

At trial, defendant testified on his own behalf as to his good character. He stated he had two sons, ages 18 and 19, that he had been divorced since 1968, and that he had a good employment record and a reputation for truth and veracity. He also stated, over the State's objection, that he had never been arrested before.

■■ ■ When a defendant takes the stand, he subjects himself to cross-examination on the issue of his good character, and the extent of cross-examination rests within the sound discretion of the trial court. (*People v. Moore* (1981), 102 Ill. App. 3d 651, 659, 429 N.E.2d 1312.) A reviewing court will not interfere with the exercise of such discretion absent a clear abuse by the trial court thereof resulting in manifest prejudice to a defendant. (*People v. Williams* (1977), 66 Ill. 2d 478, 487, 363 N.E.2d 801.) In sex offenses, the traits involved and to which the accused may introduce evidence of his good character are chastity, morality and decency. *People v. Partee* (1974), 17 Ill. App. 3d 166, 179, 308 N.E.2d 18.

■■ From our review of the record, we conclude that the trial court did not abuse its discretion in allowing the State to cross-examine defendant with respect to his sexual preferences, possession of homosexual literature and alleged sexual misconduct with other boys. Having testified as to his good character, the State had the right to cross-examine him with regard to his chastity, morality and decency, all of which encompassed its inquiries into whether defendant was a homosexual, possessed homosexual literature, and whether he had engaged in sexual conduct with other boys.

Finally, we note that there is no evidence in the record that the trial court relied on this testimony in determining defendant's guilt.

For the above reasons, therefore, we find defendant's assignment of errors with respect to points VI, VII and VIII without merit.

## IX

Defendant next contends that the complaining witness' testimony was neither clear and convincing, nor corroborated and, therefore, the State failed to prove defendant's guilt beyond a reasonable doubt.

It is well settled that where a conviction for taking indecent liberties with a child, of which deviate sexual assault is one form, depends on the testimony of the victim and the defendant denies the charge, the victim's testimony must be clear and convincing or otherwise substantially corroborated. (*People v. Gasner* (1979), 79 Ill. App. 3d 964, 973, 398 N.E.2d 1122.) A reviewing court will not disturb a finding of guilty unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to a defendant's guilt or where the evidence presented by the prosecution is improbable, unconvincing or contrary to human experience. *People v. Margiolas* (1983), 117 Ill. App. 3d 363, 366, 453 N.E.2d 842.

In the present case, the points relied upon by defendant with respect to this issue are failure by Larry S. to make a prompt complaint, his admission of continuing to accompany defendant's nephew to defendant's apartment, his initial failure to tell the police of the crimes when questioned and his alleged retraction that defendant had "touched" him.

We believe the above actions of Larry S. following defendant's assault upon him are easily understandable after such an experience. It must be remembered that Larry S.'s emotional and mental capabilities were those of a 12-year-old boy at the time of the crimes against him. As he testified, defendant's nephew promised him that defendant would not "grab" him again as he had done on his second visit to defendant's apartment. On his third visit to defendant's apartment, however, defendant committed the offenses for which he was charged. Further, the purpose of Larry S.'s visits to defendant's apartment either had been to ride defendant's motorcycle or to ask him whether he had syphilis. His failure to initially tell the police of defendant's assault was temporary; he stated that he was too embarrassed to admit to defendant's actions in the presence of his stepfather, but did admit to the assault once his stepfather left the room. We also note that it was defendant's nephew who testified that the victim retracted his statement that defendant had "touched" him, not the victim. The record further discloses that on cross-examination the victim did not contradict or equivocate on any of the testimony he gave on direct exami-

nation, the defense thus failing to impeach him.

We conclude the evidence presented was sufficient to convince the trier of fact of the victim's credibility and that his testimony was clear and convincing, probable and consistent with human experience. Accordingly, we hold that the State met its burden of proving defendant guilty beyond a reasonable doubt.

## X

Defendant also asserts that the State failed to prove that the assault occurred on May 12, 1981. Defendant premises his argument on the fact that he did not purchase a motorcycle, which the victim testified he rode, until May 28 or 29, 1981, approximately 18 days after Larry S. stated he was assaulted after returning from a ride on defendant's motorcycle. In support of his contention, defendant produced certain documents pertaining to the purchase of the motorcycle.

In a bench trial, it is the trial court's duty to determine the witnesses' credibility and the weight to be given their testimony. "The court's findings will not be disturbed on review unless they are palpably erroneous." (*People v. Roper* (1983), 116 Ill. App. 3d 821, 824, 452 N.E.2d 748.) Where evidence in a criminal trial is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact. *People v. Woods* (1980), 81 Ill. 2d 537, 542, 410 N.E.2d 866.

As the State argued in closing argument, and we agree, these documents merely showed defendant purchased a motorcycle on May 28 or 29, 1981. They do not show that defendant did not have a motorcycle on May 12. It therefore was entirely plausible for the trier of fact, given the victim's clear, convincing and unimpeached testimony, to conclude that defendant had a motorcycle in his possession on May 12, 1981. Accordingly, defendant's argument as to this issue must fail.

## XI

Finally, defendant argues that the case should be reversed and remanded for a new sentencing hearing based on the trial court's error finding defendant guilty of two counts of deviate sexual assault and two counts of indecent liberties. At trial, although the court found defendant guilty of two counts of deviate sexual assault and merged the indecent-liberties counts as lesser included offenses, at the sentencing hearing the court, after being erroneously informed by the State that it had neglected to make findings on the

indecent-liberties counts, sentenced defendant to concurrent terms of eight years on the deviate-sexual-assault counts and six years on the indecent-liberties counts.

The State, although it concedes the error, argues that remand of the case is unnecessary and that the trial court need only vacate the indecent-liberties sentence since the court imposed separate sentences for each offense. The State further argues that there is no indication that the indecent-liberties conviction was considered by the court when imposing the deviate-sexual-assaults sentence.

It is true, as the State contends, that where a defendant has been separately sentenced and no indication exists that the conviction to be vacated was considered by the trial court in rendering its sentence on another offense, a reviewing court need not remand but may merely vacate the erroneous sentence or sentences. (*People v. Robinson* (1984), 122 Ill. App. 3d 362, 369-70, 461 N.E.2d 493.) It is to be noted, however, that the State in the present case erroneously called the court's attention to its failure to make findings on the indecent-liberties counts on two occasions during the sentencing hearing, despite the fact that after trial the court had properly found those counts of the indictment had merged into the deviate sexual assault counts. We believe, therefore, that the trial court could have been misled into believing defendant had committed four, rather than two, crimes when it sentenced defendant. See *People v. Mitchell* (1984), 105 Ill. 2d 1, 15, 473 N.E.2d 1270.

On this point we further hold that the court erred in sentencing defendant on two counts of deviate sexual assault, although neither party has raised the issue on appeal. " 'Deviate sexual conduct' *** means any act of sexual gratification involving the sex organs of one person and the mouth or anus of another." (Ill. Rev. Stat. 1979, ch. 38, par. 11—2.) In the instant case, defendant was convicted of two counts of deviate sexual assault, one charging oral copulation and the other charging anal intercourse on the same child, on the same date and at the same time.

Illinois courts have held that where a defendant has committed both acts almost simultaneously on the same child at the same place and time, they constitute one offense, not two. (*People v. Cox* (1972), 53 Ill. 2d 101, 104, 291 N.E.2d 1; *People v. Partee* (1974), 17 Ill. App. 3d 166, 181, 308 N.E.2d 18.) Accordingly, defendant should have been convicted on one charge of deviate sexual assault rather than two assault counts and two counts of indecent liberties. We therefore direct the trial court to take this point into consideration in rendering its decision at the resentencing hearing.

28

For the foregoing reasons, defendant's conviction is affirmed in part and reversed in part, sentence vacated, and the cause remanded for resentencing, with directions.

Conviction affirmed in part and reversed in part; sentence vacated; cause remanded for resentencing, with directions.

SULLIVAN, P.J., and LORENZ, J., concur.