THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANIEL UNDERWOOD, Defendant-Appellant.

First District (1st Division)   No. 80—2094

Opinion filed August 30, 1982.—Rehearing denied October 4, 1982.

Dennis Cunningham, Brian Glick, Jonathan C. Moore, and Charles W. Hoffman, all of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lester M. Joseph, and John D. Cecilian, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

Following a jury trial, Daniel Underwood (defendant) was found guilty of aggravated battery and attempt murder. He was sentenced to a term of 10 to 30 years in prison. He now appeals.

On appeal, defendant argues that: (1) the trial court erred in denying his motion to suppress; (2) the evidence was insufficient to prove beyond a reasonable doubt that defendant was legally responsible for his partner's acts; (3) the jury was improperly instructed as to the legal definition of accountability; (4) the trial court should have clarified the jury instruction defining responsibility; (5) the trial court erred in permitting the prosecutor to misstate the law regarding accountability during closing argument; (6) the trial judge gave an improper response to a juror's question during deliberations; (7) the trial court deprived defendant of his right to a fair trial by permitting a juror to remain on the jury after she said she could no longer be fair; (8) the sentence he received for his conviction of attempt murder was excessive; and (9) he was denied his right to a speedy trial because there was a 75-month delay between his arrest and trial.

We affirm.

In the early morning hours of Sunday, April 8, 1973, Curtis Bolton was working at a Clark gas station located at the intersection of Chicago and Kedzie avenues. Bolton noticed two suspicious looking characters in an alley behind the station. Suspecting that he was about to be robbed, Bolton called the police. Chicago police officers Drink and Kanzler promptly responded to the call. When they arrived, defendant and Barney Lonzo entered a building near the gas station. The two officers followed them into the building and ordered them to come down from the first landing. Lonzo leaned over a railing and shot Officer Kanzler with a .45-caliber pistol. Officer Drink called for further police assistance.

Officers Cool, Guido, Colonna and Ferrell responded to Drink's call for help. Defendant and Lonzo entered an apartment in the building through the front door and ran through to the back porch. As Of-

ficer Ferrell arrived at the back of the building, he was shot in the face.

Defendant and Lonzo fled into another apartment in the building, in which a family named Young resided. Defendant was found sitting in the bedroom of the apartment. Officer Drink testified that as he approached defendant, defendant positioned himself in a karate stance. The two fought for several minutes until defendant was subdued by another officer, Officer Broderick. Broderick punched and shoved defendant, using his hands, feet, body and handcuffs to control defendant. He claims he did not strike defendant after he was handcuffed.

Defendant was arrested and taken to the 11th District lockup. Approximately one hour after his arrest, defendant was given his *Miranda* warnings and the questioning began. All of the officers present agreed that defendant did not request a lawyer. They all testified that he was lucid and coherent during the *Miranda* warnings and questioning and that he did not complain of any pain. According to the officers, defendant confessed that he and Lonzo had planned to rob the gas station.

Defendant gave a more detailed account of the arrest and the events that followed. He testified that the officers patted him down in the hallway of the apartment and then handcuffed his hands behind his back. Once he was handcuffed, Officer Drink turned him around and kneed him in the groin. As defendant bent over from the blow, Drink pushed him to the floor and jumped on top of him. Sitting on his chest, Drink struck him twice in the face with a blackjack.

The officers lifted defendant from the floor and carried him into a bedroom of the apartment, where he was beaten and kicked by a number of officers. One of the apartment dwellers claimed that there was blood all over the floor and the furniture. Defendant claims he was carried out through the front door of the apartment, kicked down the stairs to the ground floor and carried out and put into a squadrol. When he arrived at the police station, he was confronted by three or four officers who kicked him several times. He then was taken inside where he again was beaten.

Defendant stated that he could only vaguely remember plain clothes officers trying to question him. He testified that one officer whacked him across the face with a nightstick. He claims he said nothing to the officers except that he had not done anything. He claims that he requested a lawyer and a phone call, neither which was afforded him.

Defendant made a motion to suppress his post-arrest statement.

The trial court denied the motion. Defendant appeals.

First, defendant argues that the trial court erred in denying his motion to suppress. He claims that because the police continued to interrogate him after he had requested a lawyer and because he was beaten to confess, his confession should not have been admitted at trial. The State, on the other hand, maintains that defendant did not request a lawyer after he was given his *Miranda* rights and that the police did not use force to elicit a confession and that his confession, therefore, was properly admitted at trial. The question of the admissibility of this particular evidence is of vital importance. The statement defendant allegedly made to the police was that he and Lonzo planned to rob a gas station on the morning the shootings took place. The evidence is crucial to the State's theory that defendant should be held accountable for Lonzo's acts. The trial court found that there was sufficient evidence that defendant had been advised of his rights, that he had not requested a lawyer and that his confession had not been elicited by force.

It is well established that police officials may not continue to question an accused person who has requested an attorney. (*Miranda v. Arizona* (1966), 384 U.S. 436, 474, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1628; see *Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321.) No statement obtained in violation of this rule may be allowed into evidence as part of the prosecutor's case. Two police officers who questioned defendant at the police station after his arrest, testified that defendant was given his *Miranda* rights before any questioning began. They testified that he did not request a lawyer. Defendant testified that he requested a lawyer and that his request was denied.

■ It is the function of the trial court to resolve conflicts in the evidence. (*People v. Marek* (1980), 92 Ill. App. 3d 746, 761, 415 N.E.2d 1230.) The direct conflict between the police officers' and defendant's testimony as to whether defendant requested a lawyer is a question of credibility best resolvable by the trial court. We decline to overturn its finding on this credibility issue.

Additionally, defendant contends that his confession was obtained by force. The State contends that his confession was voluntary. The determination of voluntariness is to be made by the trial court based on the totality of the circumstances. *People v. Johnson* (1970), 44 Ill. 2d 463, 468, 256 N.E.2d 343; *People v. Lewis* (1979), 75 Ill. App. 3d 259, 278, 393 N.E.2d 1098.

There is no question but that defendant received a severe beating. Defendant claims that he was beaten after his arrest, both in the

apartment where he was found and at the police station. The State claims that the police officers used force only when defendant resisted arrest and that no force was used on defendant to elicit a confession. Several police officers testified that the officer beat defendant to subdue him at the time of his arrest. Several others testified that he appeared to be lucid and coherent while he was being questioned at the police station and that although defendant looked like he had been in a fight, he did not complain that he was in pain. An assistant State's Attorney who went to interview defendant stated that he advised defendant of his rights, that defendant indicated that he understood them and that defendant indicated that he desired to talk to him. Defendant did complain that he was in pain and the attorney promptly sent defendant to the hospital.

■ The trial court found that the police used unreasonable force to effectuate defendant's arrest, but that he was coherent during questioning and that his statements were voluntarily made. We do not condone the use of excessive force in effectuating an arrest. The force used here was clearly excessive. We also believe that a more prudent course of action would have been to take defendant for medical treatment before interrogating him. The trial court's finding on voluntariness, however, will not be disturbed on review unless it is against the manifest weight of the evidence. (*In re Lamb* (1975), 61 Ill. 2d 383, 388, 336 N.E.2d 753; *People v. Lewis* (1979), 75 Ill. App. 3d 259, 278, 393 N.E.2d 1098.) The trial court is not required to be convinced beyond a reasonable doubt that the confession was voluntary. (*People v. Johnson* (1970), 44 Ill. 2d 463, 470, 256 N.E.2d 343.) We have carefully reviewed the record and find that the trial court's finding that defendant's statements were voluntarily made was not against the manifest weight of the evidence. The ruling of the trial court on the motion to suppress was correct.

Second, defendant argues that the evidence before the jury was not sufficient to prove beyond a reasonable doubt that defendant was legally accountable for Lonzo's acts. A person is legally accountable for the acts of another when either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. (Ill. Rev. Stat. 1979, ch. 38, par. 5—2; *People v. Baynes* (1980), 87 Ill. App. 3d 1000, 1009, 410 N.E.2d 894.) Mere presence or negative acquiescence alone is not enough to establish accountability. (*People v. Nugara* (1968), 39 Ill. 2d 482, 487, 236 N.E.2d 693.) Evidence that an individual was present at the scene of a crime without disapproving or opposing it,

can, however, be considered together with other circumstances in determining whether that individual should be held accountable. (*People v. Torres* (1981), 100 Ill. App. 3d 931, 938, 427 N.E.2d 329.) One may be held accountable for the acts of another without having actively participated in the overt act. *People v. Ray* (1979), 80 Ill. App. 3d 151, 156, 399 N.E.2d 977.

■ Here, defendant and Lonzo planned to rob a gas station. Together they fled from the police. Defendant stood by when Lonzo shot the officers. The two fled into an apartment together and defendant asked one of the occupants to hide a gun. Defendant made no attempt to disavow his connection with Lonzo. In our judgment, defendant was properly found to be accountable for Lonzo's acts.

Third, defendant argues that the jury was improperly instructed as to the legal definition to accountability. As we have previously stated, a person is legally accountable for the acts of another when either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. (*People v. Baynes* (1980), 87 Ill. App. 3d 1000, 1009, 410 N.E.2d 894.) The trial court instructed the jury that it was incumbent on the State to prove: "(1) that the defendant or a person for whose conduct he is responsible performed an act which constituted a substantial step toward the commission of the crime or murder; and (2) that the defendant or a person for whose conduct he is responsible did so with intent to commit the crime of murder * * *."

The trial court rejected an instruction tendered by the defense which used the term "legally responsible" in place of the word "responsible." Defendant claims that the trial judge should have given the tendered instruction to assure that no juror would confuse legal responsibility with a moral or social responsibility. He urges that the instruction would have been particularly appropriate in this case because the jury could find defendant "responsible" for Lonzo's crime because of the fact that he was seven years older than Lonzo and was Lonzo's martial arts instructor.

■ In *People v. Surges* (1981), 101 Ill. App. 3d 962, 428 N.E.2d 1012, we recently addressed the exact argument which defendant now advances. In *Surges*, we found that since the jury was read IPI Criminal No. 5.03 which defines "responsibility," it is unnecessary for the trial court to add the word legally to modify "responsible." (101 Ill. App. 3d 962, 970; see Illinois Pattern Jury Instruction, Criminal, No. 5.03 (1968).) As in *Surges*, the jury in the instant case was read IPI Criminal No. 5.03. We therefore reject defendant's contention that the

jury was misinformed as to the legal definition of accountability.

Fourth, defendant argues that the trial court should have clarified IPI Criminal No. 5.03. That instruction reads: "A person is responsible for the conduct of another person when, either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, he knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the crime." Defendant claims that the following instruction should have been given:

"In order to convict a person under accountability principles, the State must prove (1) that the defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offenses; (2) that this participation must have taken place either before or during the commission of the offenses; and (3) that it must have been with the concurrent, specific intent to promote or facilitate the commission of the offenses * * *. Presence at the scene is not culpable, and knowledge that the crime is being committed is not such an affirmative act as to constitute aiding or abetting."

Defendant contends that the proposed instruction would have separated the definition of accountability into its component parts, making it clear that the jury had to be satisfied that the State had to prove each of the elements beyond a reasonable doubt and that proof of aiding and abetting, without proof of "intent to promote or facilitate," is not sufficient to establish guilt. Additionally, defendant urges that the proposed instruction would have informed the jury that defendant's presence at the scene of the crime and his failure to act to stop Lonzo, do not prove that he aided or abetted Lonzo.

■ Illinois courts consistently have held that IPI Criminal No. 5.03 properly advises the jury on the law of accountability. (*People v. Dandridge* (1979), 79 Ill. App. 3d 693, 697, 398 N.E.2d 955; *People v. Poll* (1979), 74 Ill. App. 3d 534, 538, 393 N.E.2d 732.) Thus, we believe it was sufficient for the trial court to give this instruction rather than the one proposed by defendant.

Fifth, defendant contends that the trial court erred in permitting the prosecutor to misstate the law regarding accountability. During the State's closing argument, the prosecutor stated: "*** the fact that [defendant] didn't try to stop [Lonzo] *** you can consider that *** because that's another act of aiding and abetting Lonzo." Defense counsel objected and the trial court overruled the objection.

It is well established that mere presence at the scene of a crime or negative acquiescence in another's actions is insufficient to make

defendant accountable. (*People v. Rodriguez* (1980), 89 Ill. App. 3d 941, 945, 412 N.E.2d 655.) It is, however, a factor which may be considered in determining whether defendant aided or abetted. *People v. Torres* (1981), 100 Ill. App. 3d 931, 938, 427 N.E.2d 329; *People v. Ray* (1979), 80 Ill. App. 3d 151, 156, 399 N.E.2d 977.

■ We agree with defendant that the trial court should have sustained defense counsel's objection. Nevertheless, we do not believe the court's failure to sustain the objection was reversible error. The jury was properly instructed on the law of accountability and defense counsel had the opportunity to respond to the statement in closing argument.

Sixth, defendant argues that the trial judge gave an improper response to a juror's question during deliberations. The juror asked "On attempt murder, does the intent have to apply to he [*sic*] *and* the person for whom he is responsible? Please clarify." Over defense counsel's objection, the trial judge wrote back: "The defendant, *or* a person for whose conduct he is responsible, must have the required intent." Defendant claims that the judge's response was misleading and in essence eliminated the requirement of intent on the part of defendant.

■ The jury had properly been instructed that the State must prove "that the defendant or a person for whose conduct he is responsible did so with intent to commit the crime of murder." The judge's response to the juror's question was nothing more than a reiteration of what he had stated in instructing the jury. There was no error in the trial judge's response to the juror's question.

Seventh, defendant argues that the trial court deprived him of his right to a fair trial by permitting a juror to remain on the jury after she said she could no longer be fair. On Friday, August 23, a juror informed the trial judge that she could not continue to serve because her husband's vacation started the following Monday and she had plans to leave on a trip with him. She stated that she could be fair and impartial through Monday. The case went to the jury at 5:20 Monday evening. Neither defense counsel nor the juror made any protest at this time. Deliberations continued for six hours Monday night, after which the jury was sequestered for the evening. The jury resumed deliberating Tuesday morning at 9:35. Later that day, the jury reached its verdict. The verdict was announced at 3:30 p.m.

■ The determination of whether a juror possesses a state of mind which will enable her to give the accused a fair and impartial trial rests within the sound discretion of the trial judge and will not be reversed unless it is against the manifest weight of the evidence.

(*People v. Veal* (1978), 58 Ill. App. 3d 938, 971, 374 N.E.2d 963.) The burden is on the party objecting to the juror to show the prejudice of the juror. (*People v. Chatman* (1977), 49 Ill. App. 3d 1034, 1036, 364 N.E.2d 739.) Defendant has failed to show any prejudice on the part of the juror or any prejudice resulting from the trial judge's handling of the matter. We find, therefore, that defendant was not deprived of his right to a fair trial.

Eighth, defendant argues that the sentence he received for his conviction of attempt murder was excessive. It is axiomatic that sentencing is a matter of judicial discretion. Absent a clear abuse of discretion, the sentence imposed may not be altered by the trial court. *People v. Perruquet* (1977), 68 Ill. 2d 149, 158, 368 N.E.2d 882.

■ The trial judge thoroughly considered the facts and circumstances of the case in passing sentence on defendant. He considered: that defendant was the older of the two offenders; that defendant had ample opportunity to extricate himself from the situation but failed to do so; and that Lonzo had been sentenced to 15 to 60 years in prison. The judge did not abuse his discretion in sentencing defendant to a term of 10 to 30 years.

■ Finally, defendant argues that he was denied his right to a speedy trial because of the length of time between his arrest and trial. Defendant was arrested on April 8, 1973. His trial did not start until July 23, 1979. The record indicates that there were approximately 64 continuances during this period. Of those 64 continuances, 31 were on defendant's motion, 31 by agreement and 2 were on the State's motion. A defendant is considered to have occasioned a delay where he requests a continuance, agrees to a continuance or when his actions otherwise contribute to the delay. (*People v. Bivins* (1981), 97 Ill. App. 3d 386, 392, 422 N.E.2d 1044.) Because the large majority of continuances were either requested or agreed to by defendant, we do not believe he was denied his right to a speedy trial.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.