THE PEOPLE *ex rel.* JESSE HATCH, Petitioner-Appellant, v. RICHARD J. ELROD, Sheriff of Cook County, Respondent-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESSE HATCH, Defendant-Appellant.

First District (1st Division) Nos. 1—83—0370, 1—83—1738 cons.

Opinion filed June 30, 1989.—Modified on denial of rehearing December 4, 1989.

1006

Dennis M. Doherty, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Jerome F. Marconi, Jr., Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

This case involves two consolidated appeals. In the first appeal, the defendant, Jesse Hatch, challenges the trial court's dismissal of his petition for *habeas corpus*. In the second one, he appeals from a conviction for murder and armed robbery and a sentence of natural life imprisonment, alleging that: (1) he was not found guilty of armed robbery beyond a reasonable doubt; (2) he was not found guilty of murder beyond a reasonable doubt; (3) the trial court erroneously allowed statements made by the decedent into evidence as dying declarations and spontaneous utterances; (4) the statements were erroneously admitted against the defendant as evidence of both murder and armed robbery; (5) the trial court forced the defendant to waive a jury by requiring him to proceed with a tainted venire; and (6) the trial court abused its discretion by imposing a sentence of life imprisonment. We affirm defendant's convictions.

At the time of the incident the defendant was living with his wife, Marilyn Green, their two children and his father-in-law, Louis Westry, at 9600 Avalon in Chicago. In June 1980, the decedent, Robert Magoon, approached Westry and solicited him to obtain a stolen auto for him. Westry told Magoon that he was on probation and could not obtain a car for him but that the defendant could. On August 4, 1980, Westry told Magoon that the defendant had a car for him, and Magoon said that he would be right over. While Westry was in the bath he heard the sound of a car horn. When he came out he found that the defendant and the defendant's car were gone.

At 10:45 p.m. on August 4, 1980, Officer Morrison received a call that shots had been fired at 121 West 112th Place. He went to the garage and found Magoon locked in the trunk of a car, calling for help. He had been shot in the face, chest, back and neck. The officer found four empty .45 caliber casings and a bullet on the floor. Magoon was incoherent and was taken to the hospital by ambulance.

At the hospital, the victim, who later died, told the police that he knew that he was in serious condition and that he could feel the bullets passing through him. He said that he had gone to Mr. Westry's house to meet with a person named "Jeff" who would take him to see a stolen 1979 Thunderbird. When they arrived at 121 West 112th Place, the defendant went to the garage and asked Magoon to help

him open the garage door. When Magoon went to assist him, the defendant pulled out a .45 caliber semiautomatic pistol, announced that it was a robbery and shot him repeatedly. While Magoon was lying on the floor, the defendant went through his pockets and took $300 cash. He forced the victim to get into the trunk of the car, placed the gun against his head and pulled the trigger. When the gun failed to discharge, he closed the trunk of the car and left.

On August 5, 1980, the defendant went to a currency exchange and attempted to cash a check drawn on National Acoustics. The victim owned National Acoustics and was in possession of the company checkbook on the night he was killed. The owner of the currency exchange was not familiar with the maker of the check so she called the drawer, National Acoustics, and was told that the check had been taken in a holdup. She tried to detain the defendant until the police arrived, but he left the currency exchange without the check.

About a minute after the defendant left, the police arrived and obtained a description of the defendant. They found him at 7530 South Cornell with Marilyn Green, stopped him, advised him of his rights and placed him in the squad car. They drove him to the currency exchange, where he was identified by the owner as the person who had tried to cash the stolen check. The officer searched the defendant and found a set of keys which had belonged to the victim.

After arriving at the police station, the police searched the backseat of the police car because they had noticed the defendant moving suspiciously in the backseat of the squad car. They found under the seat cushion a white General Motors key, a notice to appear complaint form with the defendant's name on it, and a live .45 caliber cartridge which was later found to have been chambered in and extracted from the same gun as the four casings recovered at the scene of the murder. The defendant was transported to Area 2 headquarters, where he was brought into an interview room and searched. The police found two blood-soaked $50 bills in the defendant's sock. A lab test revealed that the blood on the bills was the same type as that of the victim.

On August 6, 1980, Robert Magoon died of multiple gunshot wounds to the kidney, small and large intestines and mouth which had been fired at close range. Defendant was subsequently indicted on three counts of murder, one count of armed robbery and one count of armed violence. After a bench trial, he was found guilty of murder and armed robbery and was sentenced to natural life imprisonment.

■■ While awaiting trial on the murder and armed robbery

charges, defendant filed a *habeas corpus* petition, alleging that his right to due process had been violated because he had been denied a preliminary hearing and a speedy trial. The petition was dismissed and defendant appeals from that dismissal. "Every person imprisoned or otherwise restrained of his or her liberty *** may apply for habeas corpus." (Ill. Rev. Stat. 1987, ch. 110, par. 10—102.) The defendant in the instant case was seeking to secure his liberty by filing a writ of *habeas corpus*. Upon sentencing, the defendant had a legal right to appeal the judgment of the trial court. However, an *habeas corpus* proceeding is not a substitute for a direct appeal. *Baker v. Department of Corrections* (1985), 106 Ill. 2d 100, 106, 477 N.E.2d 686; *People ex rel. Kazubowski v. Ray* (1971), 48 Ill. 2d 413, 418, 272 N.E.2d 225.

■ As to defendant's assertion that his due process right had been violated by the denial of a preliminary hearing, section 7, article 1, of the Illinois Constitution provides that no person shall be held to answer for a crime punishable by death or by imprisonment unless the initial charge has been brought by grand jury indictment or pursuant to a preliminary hearing to establish probable cause. (Ill. Const. 1970, art. I, §7.) All that is required by this section is that an accused be afforded a prompt probable cause determination of the validity of the charge either at a preliminary hearing or by grand jury indictment. *People v. Kline* (1982), 92 Ill. 2d 490, 501, 442 N.E.2d 154.

■ The record shows that the defendant was arrested on August 5, 1980, given a bond hearing on August 6, 1980, and indicted by a grand jury on August 7, 1980, the day after the victim's death. The defendant has not established how he was prejudiced by this delay or that he suffered actual and substantial prejudice as a result of his having failed to receive a preliminary hearing. (See *People v. Holman* (1984), 103 Ill. 2d 133, 469 N.E.2d 119, *cert. denied* (1985), 469 U.S. 1220, 84 L. Ed. 2d 347, 105 S. Ct. 1204.) Under these facts, we find that the defendant received a prompt determination of probable cause and was not denied due process.

■ As to his argument that he was denied a speedy trial, the record indicates that the continuances of defendant's trial were either on the defendant's motion, by agreement of the parties or by order of the court. When a defendant requests a continuance, agrees to a continuance or through his actions otherwise contributes to the delay, a defendant is considered to have occasioned a delay. (*People v. Underwood* (1982), 108 Ill. App. 3d 846, 855, 439 N.E.2d 1080.) Because the continuances were either requested by the defendant or

agreed to by the defendant, we conclude that he was not denied a speedy trial.

■■ ■ The primary question to be resolved in an *habeas corpus* proceeding is the existence of jurisdiction, *i.e.*, whether a particular order, judgment or the validity of the process being attacked is within the authority of the court issuing it. (*People ex rel. Burbank v. Irving* (1982), 108 Ill. App. 3d 697, 700, 439 N.E.2d 554.) In the instant case, the basis of the defendant's petition for *habeas corpus* relief was his alleged denial of a preliminary hearing and that he was denied his constitutional right to a speedy trial. We have determined that defendant's claim is without merit. The trial court did not err in dismissing the defendant's writ of *habeas corpus* petition since jurisdiction was proper in the case at bar and the issues raised in the defendant's *habeas corpus* petition are not the type of claims upon which *habeas corpus* relief is granted. The defendant had a constitutionally protected right to raise these issues on direct appeal. He subsequently exercised his right and raised these issues on direct appeal, which is the proper vehicle to address these issues.

Also, defendant tangentially contends that he was denied his constitutional right to the effective assistance of counsel when his court-appointed attorney failed to appear at his hearing seeking *habeas corpus* relief. It should be noted that when the trial judge called the defendant's case, the assistant public defender to whom the defendant refers notified the court that he had no knowledge of representing the defendant in this proceeding. Subsequently, the trial court called upon another assistant public defender to represent the defendant.

■■ ■ In order for the defendant to establish his ineffective assistance of counsel claim, he must show that counsel's performance was so deficient that it fell below an objective standard of reasonableness and but for counsel's errors, the result of the proceedings would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068; *People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) In the present case, the defendant has failed to make a showing that the results of the proceeding would have been different had the trial court not substituted counsel. Thus, we have determined that the defendant did not suffer any prejudice, as required by *Strickland v. Washington*, by the substitution of counsel in light of the fact that the issues raised as a basis for his *habeas corpus* petition were: (1) raised prematurely and (2) subsequently raised and addressed on di-

rect appeal. Therefore, his claim that he was denied the effective assistance of counsel must fail.

Defendant's second appeal concerns his convictions for murder and armed robbery. He contends, essentially, that he was convicted upon hearsay statements which were improperly admitted into evidence.

Prior to trial, the defendant made a motion *in limine* to suppress certain statements the decedent made to Officer Morrison as he was being wheeled into the emergency room and to the homicide detectives while in the emergency room. He contends that these statements did not fall into any of the hearsay exceptions and were erroneously admitted into evidence.

 In order for a hearsay statement to be admissible under the excited utterance or spontaneous declaration exception to the hearsay rule three factors must be present: (1) an occurrence or event sufficiently startling to cause a spontaneous and unreflecting statement; (2) an absence of time to fabricate; and (3) a relationship between the statement and the occurrence or event. (*People v. Staten* (1986), 143 Ill. App. 3d 1039, 1053, 493 N.E.2d 1157.) In determining whether a statement qualifies as an excited utterance, all the circumstances surrounding the making of the statement must be examined to determine if there was an opportunity for reflection and invention. (*People v. Smith* (1984), 127 Ill. App. 3d 622, 628, 469 N.E.2d 634.) Both the time which has elapsed and the distance which the decedent has travelled from the scene of the crime must be considered in determining whether a declaration has the necessary spontaneity. (*People v. Robertson* (1976), 43 Ill. App. 3d 143, 147, 356 N.E.2d 1180.) A gunshot wound is considered sufficiently startling to produce an unreflective response (*People v. Webb* (1984), 125 Ill. App. 3d 924, 933, 466 N.E.2d 936), and the fact that the statement was made in response to queries does not automatically negate its spontaneity but is a factor to be considered. *Smith*, 127 Ill. App. 3d at 628.

 The decedent's statement to Officer Morrison as he was being wheeled into the emergency room of the hospital clearly met two of the three aforementioned criteria. The evidence indicates that at approximately 10:45 p.m., shortly after receiving a call of shots fired, Officer Morrison found the victim in the trunk of a car, injured and incoherent. Within 10 minutes the victim was being wheeled into the emergency room, at which time he told Officer Morrison who had shot him and where that person lived. The multiple gunshot wounds suffered by decedent constituted a sufficiently startling event to produce a spontaneous statement, and the statement was related to the

occurrence. The pertinent question, however, is whether the victim had time or opportunity to fabricate. Time alone is not determinative of the admissibility of the utterance; rather, the critical factor is the opportunity to fabricate. (See *People v. Parisie* (1972), 5 Ill. App. 3d 1009, 287 N.E. 2d 310.) There is evidence in the record that Officer Morrison arrived on the scene within minutes of receiving the call and found the victim lying in the trunk of the car badly wounded. The factual matrix in the instant case closely parallels the factual situation found in *People v. Parisie*. In both cases the victims were discovered suffering multiple gunshot wounds which ultimately caused their deaths. Both victims related what had occurred. In *Parisie* more than an hour elapsed between the shooting and the conversation. In the case at bar, the conversation with Officer Morrison took place within 10 minutes of the shooting.

In *People v. Robertson*, the victim befriended a hitchhiker who subsequently attacked her. Later, she was discovered lying in the roadway suffering from six stab wounds, one of which punctured her heart. Within less than one hour she had related to four different people what transpired. We held there that all of the statements were admissible as an exception to the hearsay rule. We noted that it was clear from the evidence that the victim was not in a condition to manufacture and narrate an untrue version of the attack and determined that the statements "obviously sprang from the shock of the event and not from conscious deliberation or calculation." *Robertson*, 43 Ill. App. 3d at 148.

▄▆ So, too, we hold in the instant case that the decedent's statement to Officer Morrison was not the product of a deliberate attempt to fabricate an occurrence, but rather, in light of the totality of the circumstances, should be considered inherently reliable and admissible as a spontaneous utterance. See *People v. Sanchez* (1982), 105 Ill. App. 3d 488, 434 N.E.2d 395; *People v. Van Scyoc* (1982), 108 Ill. App. 3d 339, 439 N.E.2d 95; *People v. Watson* (1982), 107 Ill. App. 3d 691, 438 N.E.2d 453; *People v. Fenderson* (1987), 157 Ill. App. 3d 537, 510 N.E.2d 479; E. Cleary & M. Graham, Handbook of Illinois Evidence §803.3, at 552 (4th ed. 1984).

▄▆ ▆ A dying declaration is a statement of fact by a victim concerning the cause and circumstances of his death and may be admissible into evidence as an exception to the hearsay rule when it appears to have been made by the victim under the belief that death is impending and immediate. (*People v. Staten* (1986), 143 Ill. App. 3d 1039, 1053, 493 N.E.2d 1157.) This does not require that the declarant give up all hope of recovery, however, and a statement should

not be rejected as a dying declaration when only nebulous rays of hope exist. (*People v. Davis* (1981), 93 Ill. App. 3d 217, 231, 416 N.E.2d 1197.) A court will look to all the facts and circumstances surrounding the supposed dying declaration to determine the decedent's state of mind and in doing so, it is proper to consider the grievous nature of the decedent's wounds as justifying the conclusion that he must have known of the seriousness of his condition. (*People v. Webb* (1984), 125 Ill. App. 3d 924, 934-35, 466 N.E.2d 936.) A trial court's determination of whether a statement constitutes a dying declaration will not be reversed on appeal unless its findings are palpably contrary to the manifest weight of the evidence. *People v. Rhoads* (1982), 110 Ill. App. 3d 1107, 1120, 443 N.E.2d 673.

■■■ We find that the decedent's statements to Detectives Corless and Dignan were properly admitted into evidence as dying declarations. At approximately 11:10 p.m., the detectives were in the emergency room and heard the doctor tell the victim that he was in very serious condition and needed an operation immediately and heard the victim respond that he knew. They asked the victim if he knew that he was in bad shape, to which he replied, "Yes, I could feel the bullets passing through me. I know I'm in bad shape." The detectives spoke to the victim intermittently for approximately 20 minutes during which time he told them the circumstances of the shooting and that the defendant had been the assailant.

Although the victim had not explicitly been informed that he was going to die, there is no question that he was in extremis. He had been shot five times; one bullet pierced the left cheek, went through the mouth, penetrated the jaw and exited through the right side of the face; a second bullet entered into the left shoulder, passed through the body and caused a fracture of the right arm before exiting from the anterior of the chest wall; one bullet pierced the back, and two bullets were lodged in his back. The bullets had torn through the victim's right kidney, small intestine, abdomen and colon. Considering the seriousness of these injuries, along with the victim's statement that he knew that he was in bad shape, we believe that the trial court could have properly found that the deceased truly believed that he was dying and that his death was imminent.

■■■ Defendant maintains that this evidence is insufficient to convict him for murder. We disagree. The victim's declarations, coupled with the facts that the defendant had attempted to hide a .45 caliber bullet which was found to have been chambered in and extracted from the same gun as the casings found at the scene of the crime, and the defendant's possession of two $50 bills covered with the

same blood type as that of the victim, are sufficient to establish his guilt beyond a reasonable doubt.

Defendant's next argument is that the State failed to establish that he committed the offense of armed robbery. He had been charged with forcibly taking a briefcase, checks and miscellaneous papers from Robert Magoon, but he claims that the State never introduced any evidence that he had taken any of these items.

The testimony at trial established that the victim had taken the National Acoustics checkbook with him when he went to purchase the car and that the defendant was in possession of a check drawn on National Acoustics the day after the shooting. The victim's wife testified that the signature on the check was not that of her husband. The State maintains that it is logical to infer from this evidence that the defendant took the check from the victim at the scene of the shooting.

The defendant contends that his statement that the check was given to him by the victim as payment for the automobile cannot be discounted. In a bench trial, it is the court's duty to determine the witnesses' credibility, and the weight to be given the evidence, and the court's findings will not be disturbed on review unless they are palpably erroneous. (*People v. Rassmussen* (1986), 143 Ill. App. 3d 11, 26, 492 N.E.2d 612.) In the present case, we cannot say that it was palpably erroneous for the trial court to doubt the defendant's statement that the victim had paid for the stolen car with a check containing a forged signature. Accordingly, this argument must fail.

Defendant also contends that he was denied a fair hearing on his motion to suppress statements because the State did not produce all material witnesses at the hearing. The "material witness" rule requires that when the voluntary nature of a statement is brought into question by a motion to suppress, the State has the burden of proving that it is voluntary by producing all material witnesses connected with the taking of the defendant's statement or by explaining their absence. (*People v. Lumpp* (1983), 113 Ill. App. 3d 694, 696, 447 N.E.2d 963.) If the State fails to call a material witness, the defendant must object in the trial court or the matter is waived for purposes of appeal. (*People v. Weathersby* (1985), 138 Ill. App. 3d 310, 317, 485 N.E.2d 1337.) In the present case, the defendant did not object to the alleged failure of the prosecution to call all of the witnesses at the hearing on his motion. Consequently, he has waived this point on appeal.

Next, the defendant claims the trial court forced him to waive

his right to a jury trial. During jury selection, a potential juror suggested that the taking of a life requires the "surrender" of a life. The potential juror was discharged and the defendant made a motion to discharge the venire. The court inquired of the venire whether the statement affected anyone's ability to remain fair and impartial and, receiving no response, determined that the venire was not tainted and denied the defendant's motion. The defendant stated that he felt that the venire was tainted, and thereby felt compelled to waive his right to trial by jury and proceed with a bench trial. He now argues that he was compelled to waive his right to trial by jury because the judge would not discharge the entire venire.

■■ ■ The determination of whether a juror would be able to give the accused a fair and impartial trial rests within the sound discretion of the trial court and should not be reversed unless it is against the manifest weight of the evidence. The burden is on the party objecting to the juror to show any prejudice on the part of the juror or any prejudice resulting from the judge's handling of the matter. (*People v. Underwood* (1982), 108 Ill. App. 3d 846, 854, 439 N.E.2d 1080.) In the present case, the juror who made the statement was excused for cause immediately after he made the statement. The judge questioned the jurors who had already been sworn to determine if they had been influenced by the statement, and they replied that they were not. The venire, when questioned, displayed no reaction. The defendant had the opportunity to proceed with *voir dire* at this point to determine whether the venire had in fact been tainted; however, he chose not to do so. In light of the fact that the defendant did not even attempt to determine whether the venire had been tainted, we regard his contention that the venire had been tainted as speculative and hold that the trial judge did not abuse his discretion by refusing to excuse the entire venire. See *People v. Newbury* (1972), 53 Ill. 2d 228, 290 N.E.2d 592.

Finally, the defendant claims that the court abused its discretion by sentencing him to natural life imprisonment for the murder of Robert Magoon, contending that the sentence cannot be justified given the fact that he is only 28 years of age, his relatively minor criminal history and his prospects for rehabilitation.

■■ ■ Section 5—8—1(a)(1)(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(b)) authorizes the trial court to impose a sentence of natural life imprisonment upon a finding that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The manner in which this crime was committed is shocking and repulsive to mem-

bers of an ordered and moral society. The fact that the defendant required the victim to crawl into the trunk of a car after shooting him repeatedly in the face and neck at close range, placed a gun against his head and locked him in the trunk when the gun failed to discharge is indicative of nothing less than wanton cruelty. In imposing sentence, the court here specifically emphasized the brutality of the crime. We find that the trial court was well within its discretion in sentencing the defendant to natural life imprisonment.

The judgment of the trial court is affirmed.

Judgment affirmed.

CAMPBELL and QUINLAN, JJ., concur.