THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOUIS PIERCE *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—88—1693, 1—88—1698 cons.

Opinion filed April 15, 1992.

Rita A. Fry, Public Defender, of Chicago (John T. Kennedy, Assistant Public Defender, of counsel), for appellant Louis Pierce.

Michael J. Pelletier and Mitchell Katten, both of State Appellate Defender's Office, of Chicago, for appellant Thomas Shanklin.

Jack O'Malley, State's Attorney, of Chicago (Christine Perille, Special Assistant State's Attorney, and Renee Goldfarb and Gael O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

This is a consolidated appeal by codefendants Thomas Shanklin (Shanklin) and Louis Pierce (Pierce), who were convicted of murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1). Shanklin was tried by a jury,

while Pierce was tried simultaneously at a bench trial. Both defendants were sentenced by the trial judge to a term of 32 years' imprisonment. Both defendants argue, on appeal, that the sentence of 32 years' imprisonment was excessive and did not reflect their rehabilitative potentials. Pierce argues, additionally, that his sixth amendment right to a fair and impartial trial was violated because the trial judge considered the jury verdict in the codefendant's case. Shanklin argues his confession was the result of coercion. Second, Shanklin maintains the court improperly determined the State did not have to produce the testimony of Marcus Taylor and Gregory Howard as material witnesses or to explain their absence at the hearing on the motion to suppress. Third, Shanklin argues he was deprived of his constitutional right to a fair jury because the trial court improperly refused to remove juror Genevieve Alston for cause. Fourth, Shanklin argues the prosecution made improper comments during closing argument which prejudiced his right to a fair trial. For the reasons set forth below, we affirm the trial court decision.

On August 5, 1986, Magnolia Burton was killed at the Stateway Gardens Housing Projects. Defendants Louis Pierce, age 16, and Thomas Shanklin, age 17, were arrested for the offense. The defendants' cases were severed. Pierce waived his right to a jury trial and was tried before the Honorable Richard Neville. Pierce was found guilty and sentenced to 32 years' imprisonment. After a jury trial, Shanklin was found guilty and sentenced to 32 years' imprisonment. The trials of both defendants were conducted simultaneously.

Terry Burton is the 18-year-old son of Magnolia Burton who lived with his brother and four sisters at 3547 South Federal in the Stateway Gardens Housing Projects. Late in the afternoon of August 5, 1986, he met another boy on the playground. After some talk, a fight broke out between Terry Burton and the youth. Both defendants as well as several people crowded around the fight scene. Shanklin put a pistol to Terry Burton's head and cocked it back. Mrs. Burton arrived, carrying a baseball bat, accompanied by her daughter, Kycha Burton. She was trying to protect her son. Shanklin and various youths present at the scene of the fight were members of the Del Vikings gang.

Mrs. Burton, Kycha Burton (Kycha), and Terry Burton (Terry) left the scene of the fight. They began walking to the building at 3547 South Federal. A youth named "Tweedie Bird," who was present at the scene of the fight, approached and said the Del Vikings were going to the building at 3615 South Federal to shoot Mrs. Burton's other son. The other Del Viking gang members, including the defendants, were at the 3615 South Federal building by the time Mrs. Burton, Kycha, and Terry arrived.

Kycha walked ahead of her mother and brother up the stairs. Mrs. Burton and Terry began walking side by side up the stairs. As Terry looked back down the stairwell, he saw the defendants run into the building and then retreat. The defendants again came back into the building accompanied by Gregory Howard. The defendants split up and went to either side of the stairwell.

While Mrs. Burton and Terry were on the stairwell, a 14-year-old girl who lived in the building came running up the stairwell, pushing into Mrs. Burton. The 14 year old, Tracy White, had started to leave the building a few minutes earlier when she was told by Shanklin to move aside. The girl ran back into the building at which time she found Mrs. Burton on the stairwell. The girl told Mrs. Burton, "they're fixing to start shooting." By the time the girl reached the second-floor landing, shots rang out. Terry and Kycha both testified they saw two hands holding guns appear on either side of the stairwell.

Mrs. Burton reached the top of the stairs and fell, clutching her chest.

Shortly after, the police arrived and Terry initially told a police officer it was Gregory Howard who had shot his mother. Gregory Howard was the leader of the Del Vikings gang. Later, Terry told the police he said Gregory Howard was the person who shot his mother because he was scared and wanted Gregory Howard to stop following him.

Kycha was approximately 17 years old at the time of the shooting. She testified she also looked down the stairs when she reached the top and saw two hands with guns and heard two shots.

Officer Berea St. Clair said he arrested Shanklin on August 13, 1986, at the Stateway Gardens Housing Projects. Shanklin initially ran from the police and was chased to an apartment in the complex. When the officers entered the apartment, Shanklin appeared from a bedroom, wearing a different set of clothes. Shanklin was placed under arrest and advised of his rights.

Shanklin was interviewed by Detective Brannigan on August 13, 1986, and denied knowledge of the homicide. After this initial interview, Shanklin, Detective Brannigan and State's Attorney Kelly conducted a second interview with Shanklin later that day. In between the interviews, Gregory Howard came to the police station. He was a witness to the shooting.

During the second interview, Shanklin stated that he was in the area of the homicide with Marcus Taylor and heard shots. After the second interview with Shanklin, Marcus Taylor came to the police station and spoke with Detective Brannigan and State's Attorney Kelly.

After the conversation with Marcus Taylor, Detective Brannigan and State's Attorney Kelly went back into the interrogation room to talk with Shanklin. At this time, Shanklin said Marcus Taylor would confirm his story. Shanklin was told that both Marcus Taylor and Gregory Howard were at the police station. They did not corroborate Shanklin's story. Shanklin said he didn't believe they would not back up his story and asked to see them. Detective Brannigan and State's Attorney Kelly then brought Marcus Taylor and Gregory Howard into the interrogation room with Shanklin. Gregory Howard told Shanklin: "You know you shot her. Why don't you just tell the truth? You are not going to get us into trouble." Shanklin replied: "I was there, I had a gun, but Pierce [codefendant] shot first."

Shanklin then agreed to make a written statement. In the statement, he said that he looked up the stairs before he shot and did not see anyone. However, when he looked up the stairs, as Pierce fired, he did see Mrs. Burton at the top of the stairs. The trial judge stated because the cases were severed, Shanklin's statement as to what occurred at the actual point of shooting could not be used against Pierce.

Dr. Edmond Donoghue, who performed the autopsy on Mrs. Burton, was called at trial as an expert witness. He opined the evidence was inconclusive as to the origin of the direction of the bullet that killed Mrs. Burton.

Closing arguments were heard in both cases. The jury returned a verdict of guilty as to Shanklin. The next day, the trial judge found Pierce guilty of murder. Both defendants were sentenced to 32 years' imprisonment. The trial court indicated at sentencing that it had considered arguments in favor of both mitigation and aggravation.

Both defendants argue their sentences of 32 years' imprisonment are excessive and, thus, constitute an abuse of discretion by the trial court. The defendants further argue the judge failed to consider their rehabilitative potential in light of their ages and lack of criminal backgrounds. Pierce argues the trial court focused on the severity of the offenses to the detriment of his rehabilitative potential. We disagree.

The decision of a trial court will not be disturbed unless an abuse of discretion occurs. (*People v. La Pointe* (1982), 88 Ill. 2d 482, 492, 431 N.E.2d 344.) Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) grants reviewing courts the power to reduce the sentence imposed by a trial court if an abuse of discretion occurs. The trial judge's sentence decision should be given great deference and weight because the trial judge is in a better position to determine the punishment to be imposed rather than a reviewing court. (*People v. Perruquet* (1977), 68

Ill. 2d 149, 156, 368 N.E.2d 882, 883.) The trial court is in a superior position to determine the appropriate sentence. Article I, section 11, of the Illinois Constitution states: "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, § 11.) Thus, each component of the constitutional provision must be considered.

■ The record reveals the trial court was aware of the duty it had to consider all relevant factors in sentencing the defendants, including their potential for rehabilitation. The trial court noted prior to imposing sentencing that it reviewed its trial notes, the presentence investigation report, and the comments made by the attorneys for both sides. The court also asked the defendants prior to sentencing if they had anything to say. The trial court specifically said in the record it was important to consider the ages of the defendants and any prior criminal history of the defendants as well as the type of conduct engaged in, in which there was an act of *extreme* aggression. The result of the defendants' act was also considered.

The parameters of sentencing the court considered under the applicable statute were not less than 20 years and not more than 40 years for murder. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(a).) The sentence of 32 years' imprisonment is within these parameters.

The trial court occupies a unique position in its ability to examine the facts of a case. Sentencing is not a reviewing court's function, and it will not substitute its judgment for that of a trial court merely because it might have sentenced differently. (*People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541.) The record indicates the trial court gave careful consideration to all relevant factors.

Pierce next argues the trial court considered incompetent evidence which resulted in him being denied a fair trial. Specifically, Pierce argues the trial court considered the jury verdict in codefendant Shanklin's case as evidence in his case. Pierce did not object at trial to the aforementioned issue and also failed to raise the issue in his motion for a new trial. Accordingly, the issue is waived. (107 Ill. 2d R. 615.) However, the plain error rule allows errors or defects which affect substantive rights to be noticed on appeal, even though they were not previously brought to the attention of the trial court. In *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, the court said the failure to raise issues before the trial court would deny that court the opportunity to grant a new trial, if warranted, and cast needless burden upon the appellate courts of review. Both an objection at trial and a written post-trial motion are necessary to preserve an issue for appeal. Ill. Rev. Stat. 1983, ch. 38, par. 116—1.

In criminal cases, application of the plain error rule is limited to instances where the evidence is closely balanced or when the error is of such magnitude that the commission thereof denies the accused a fair and impartial trial. (*People v. Young* (1989), 128 Ill. 2d 1, 44, 538 N.E.2d 461.) A "closely balanced" case is defined as one where the outcome of the case would have to be different had the impropriety not occurred, while "fair trial" refers to impugning the integrity of the judicial process or subjecting the defendant to a miscarriage of justice. *Young*, 128 Ill. 2d at 47.

The record indicates the trial court said at the close of evidence in Pierce's case the judge intended to review the notes made at trial and "to think about this." Further, the trial court said it was likely there would not be a ruling on the Pierce case until the jury returned the verdict in Shanklin's case. The State argues this is indicative of the judge simply taking time to reflect before making a decision.

Under the guidelines found in *Enoch* (122 Ill. 2d at 199), the arguments indicate the substantive constitutional right of Pierce to a fair and impartial trial could be affected if the trial court considered incompetent evidence. Therefore, review of this court is warranted.

■ The trial court reached its verdict against Pierce only after it stated the facts upon which the decision was rendered. In *People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317, the court noted in a bench trial the "trial court's judgment will not be set aside unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to the defendant's guilt." There is no such degree of proof forthcoming in Pierce's argument. Pierce's contention that the trial court relied on the jury verdict in Shanklin's case is simply conclusory in nature.

Shanklin argues the trial court improperly determined Marcus Taylor and Gregory Howard were not material witnesses. Based on this finding, the State did not have to produce them in connection with Shanklin's confession. Shanklin maintains that his confession was coerced because of pressure Marcus Taylor and Gregory Howard exerted on him during the interrogation process. The State argues: (1) Gregory Howard and Marcus Taylor were not material witnesses and (2) a *prima facie* showing was made that Shanklin's confession was voluntary. Therefore, the State did not have to produce Marcus Taylor and Gregory Howard or explain their absence at the suppression hearing.

Generally, when the voluntary nature of a confession or statement is challenged by a motion to suppress, the State has the burden of proving the statement was voluntarily given. (*People v. Watson*

(1989), 178 Ill. App. 3d 796, 807, 533 N.E.2d 1011.) The State can discharge this burden only by producing all material witnesses connected with the statement or by explaining their absence. (*Watson*, 178 Ill. App. 3d at 807.) The trial court has the responsibility of determining the voluntariness of a confession based on the totality of the circumstances. (*People v. Underwood* (1982), 108 Ill. App. 3d 846, 439 N.E.2d 1080.) The test of voluntariness is whether the statement has been made freely, voluntarily, and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he made the statement. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601.) In *People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 719, 431 N.E.2d 1154, the court held once the State has made a *prima facie* showing that a confession was voluntary, the burden shifts to the defense to produce evidence the confession was involuntary.

■ The weight of the defendant's argument rests on the alleged intimidating presence of Marcus Taylor and Gregory Howard during the interrogation of Shanklin. Marcus Taylor and Gregory Howard were brought to the police station at the request of the defendant. Shanklin said that Marcus Taylor would corroborate his innocence. When State's Attorney Kelly and Detective Brannigan told Shanklin that Marcus Taylor would not corroborate his statement, Shanklin asked for Marcus Taylor and Gregory Howard to be brought to the police station. Marcus Taylor and Gregory Howard were already at the police station, so at Shanklin's request, they were brought into the interrogation room. Gregory Howard told Shanklin that "he should admit to being the one who did the shooting." In reply, Shanklin said: "O.K., I did it but I didn't shoot first." Shanklin then agreed to make a statement. Before Shanklin made his confession statement, however, Marcus Taylor and Gregory Howard were taken out of the room. They were not physically present when Shanklin made his confession. The court in *People v. Watson* (178 Ill. App. 3d at 808) held a police officer who did not remain in the room throughout the confession and did not participate in taking the confession was not a material witness. Similarly, the trial judge, in the case at bar, found these two witnesses were not material witnesses.

The State correctly argued since Shanklin failed to produce any evidence that the confession was involuntary after the trial court determined the burden had shifted to him, the motion to suppress was properly denied.

A reviewing court will not disturb the trial court's determination as to the voluntariness of the defendant's statement absent a showing that it is contrary to the manifest weight of the evidence. (*Watson*,

178 Ill. App. 3d at 807-08.) Shanklin volunteered he shot at Mrs. Burton but implied he had a lesser degree of culpability since he did not shoot first. Accordingly, we find the defendant's statement was voluntary.

■ Shanklin next argues his right to a fair and impartial jury was prejudiced by the trial court's refusal to remove juror Genevieve Alston for cause even though she was not a member of the jury that convicted him of murder. The defense erroneously maintains prejudice to a fair and impartial jury occurred because defense counsel was forced to use a peremptory challenge to remove Ms. Alston from the jury. The defense counsel had already exhausted its remaining peremptory challenges on other jurors. The State correctly contends, however, that Shanklin had waived this issue because he failed to request additional peremptory challenges to exclude other potentially objectionable jurors. In support of its position, the State cited *People v. Washington* (1982), 104 Ill. App. 3d 386, 392, 432 N.E.2d 1020. In *Washington,* the defense counsel also exhausted its peremptory challenges, but it did not indicate to the trial court that it was being forced to accept an objectionable juror because of the error in overruling the prior challenge for cause. If defense counsel had put the trial court on notice of this fact, the trial court could have had a final opportunity to cure the alleged error by using its power to exclude the juror for cause. Because the defense in *Washington* (104 Ill. App. 3d at 392) did not notify the court that it was being forced to accept an unacceptable juror due to the trial court's alleged error, the error in denying the alleged challenge for cause was deemed waived.

Analogously, counsel for Shanklin did not notify the court he was being forced to accept unacceptable jurors due to the trial court's alleged error regarding juror Alston. Therefore, as in *Washington,* this issue is waived.

■ The final issue Shanklin raises concerns seven specific comments made during closing argument by the prosecution. The first comment addresses the prosecution rebuttal argument to defense counsel. In defense counsel's closing argument, the jurors were asked to visualize the last moment they experienced with someone they had lost. Defense counsel attempted this visualization technique with the jury in an effort to attack the credibility of Terry Burton. In response, the prosecutor argued the visualization technique was inappropriate. The death of Mrs. Burton did not occur in the pristine environment of a hospital room or a bedroom in the family home. Rather, Mrs. Burton was shot to death in the hallway of a housing project building. The prosecutor said defense counsel's attempted

analogy was "a line of garbage." Defense counsel cited a line of cases which held it is improper to attack the veracity of the defense counsel because it shifts the jury's focus from the evidence presented in the case to trial strategies. The State responded that while the prosecutor could have phrased his remarks better, they were, nonetheless, proper. In *People v. Nunez* (1984), 125 Ill. App. 3d 224, 231, 465 N.E.2d 581, the prosecutor also referred to the argument advanced by the defense counsel as "that bunch of garbage." No error was found by the court in this statement. The statement was not equivalent to casting doubt on the truthfulness of defense counsel. Accordingly, we find the prosecutor's remarks do not rise to the level of reversible error.

Defense counsel's second objectionable statement is the prosecutor's rebuttal comment about Shanklin raising his gun to Terry Burton's head, clicking it, and having the gun misfire during the fight on the playground. The defense complains this statement is not based on evidence presented in the case. However, this is incorrect because, as the record indicates, the information comes from Terry Burton's own testimony as to the sequence of events surrounding his mother's death. The jury in the case was told that closing arguments were not to be considered as evidence.

The third issue the defense raises concerns the prosecutor's comments to the jury concerning the standard of proof necessary to convict Shanklin. The defense argues that the State misstated the burden of proof to the jury. The defense maintains the State urged conviction based on the nature of the offense and the gang involvement rather than beyond a reasonable doubt. The State replied the comments were proper and did not focus solely on Shanklin's gang membership. In fact, the State points out that in the prosecutor's argument the jury was admonished not to convict Shanklin solely because he was a gang member.

The fourth issue raised by the defense addresses the legislative intent concerning the accountability instruction given to the jury. The defense argues the State's comments were solely the prosecutor's interpretation. The State maintains its position is in accord with the trial court. At trial, defense counsel objected to the prosecutor's comments about the law of accountability. The trial court ruled the prosecution's argument was proper. We agree with the trial court as there has been no misstatement of the facts in the case by the prosecution.

All other issues raised by the defense are waived because they were not raised in the post-trial motion and therefore fall within the *dicta* established in *Enoch* (122 Ill. 2d at 186).

Defense counsel argues the prosecution's objectionable comments warrant reversal of Shanklin's conviction. In support, the defendant cited *People v. Clark* (1983), 114 Ill. App. 3d 252, 448 N.E.2d 926. In *Clark*, remarks made during both opening and closing statements were found to be so prejudicial that reversal was warranted. Such is not the case with Shanklin. After an examination of the record, we find that while the prosecutor could have been more selective in his phraseology, this is insufficient to reverse this case.

Affirmed.

GREIMAN, P.J., and RIZZI, J., concur.